IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMARR L. BURNETT, | No. C 09-4693 SBA (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANT BUCK'S MOTION FOR SUMMARY JUDGMENT; DENYING REMAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT; DIRECTING SERVICE OF SMCJ DEPUTY S. BLICK; AND REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM** |
| v. | |
| DEPUTY TIMOTHY R. FRAYNE, et al., | |
| Defendants. | |
| | (Docket nos. 43 and 68) |

## INTRODUCTION

Plaintiff Omarr L. Burnett, currently incarcerated at Salinas Valley State Prison, brings the instant pro se action pursuant to 42 U.S.C. § 1983 action alleging that his constitutional rights were violated while he was housed at the San Mateo County Jail (SMCJ) and San Quentin State Prison (SQSP). Plaintiff alleged that on September 29, 2005, he suffered injuries as a result of excessive force by SMCJ Deputies Timothy R. Frayne and Chad R. Buck, former SMCJ Deputy Ryan Adler, and SMCJ Correctional Officer Catherine Bow. Thereafter, Plaintiff was transferred to SQSP. Plaintiff suffered from long-lasting injuries from the September 29, 2005 incident. He alleged that on June 2, 2006, he was still in need of treatment for pain in his wrist and ankle. Plaintiff was seen by Defendant SQSP Physician Ericsson, who "could not help [him] regarding [his] injuries to [his] wrist and ankle." (Compl. at 4.) Plaintiff claimed that Defendant Ericsson refused to provide him with medical treatment for his injuries.

In an Order dated April 23, 2010, the Court found cognizable Eighth Amendment[1] claims for the use of excessive force against Defendants Frayne, Adler, Buck, and Bow; and for deliberate

---

[1] The Court previously cited the Eighth Amendment in its Order of Service as the applicable constitutional standard for Plaintiff's excessive force claim. In addition, Defendants have also relied on an Eighth Amendment analysis in their motion for summary judgment. Plaintiff was a post-arraignment pretrial detainee at the time of the September 29, 2005 incident; therefore, his excessive force claim should have been analyzed under the Due Process Clause of the Fourteenth Amendment. See Graham v. Conner, 490 U.S. 386, 395 n.10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 535-39 (1979)). Defendants acknowledge that the Fourteenth Amendment is the applicable constitutional standard. (Mot. for Summ. J. at 11-12, note 4.) Therefore, in this Order, Plaintiff's excessive force claim will be analyzed under the Fourteenth Amendment.

1  indifference to serious medical needs against Defendant Ericsson.  (Apr. 23, 2010 Order at 3.)  The
2  Court ordered service of the complaint and directed the aforementioned Defendants to respond.
3  However, service was ineffective on Defendant Ericsson.  In an Order dated May 10, 2010, the
4  Court ordered Plaintiff to provide within thirty days a current address for unserved Defendant
5  Ericsson or "to confirm whether the 'Dr. Ericcson' he refer[red] to in his complaint [was] actually
6  Nurse Practitioner Patricia Erickson."  (May 10, 2010 Order at 1.)  Thirty days passed, and Plaintiff
7  did not respond to the Court's request.  In an Order dated June 29, 2010, the Court dismissed <u>sua</u>
8  <u>sponte</u> the claims against Defendant Ericsson without prejudice under Federal Rule of Civil
9  Procedure 4(m), which states that if a complaint is not served within 120 days from the filing of the
10 complaint, it may be dismissed without prejudice for failure of service.  (June 29, 2010 Order at 2.)

11         On January 31, 2011, Defendants Frayne, Adler, Buck, and Bow filed an answer to the
12 complaint.

13         On May 4, 2011, Defendants filed a motion for summary judgment (docket no. 43) on the
14 grounds that: (1) there is no objective evidence "to support Plaintiff's allegations that Defendants
15 used excessive force against him in violation of the Eighth Amendment"; (2) the use of force by
16 Defendants was "minimal, appropriate, and necessary based on the circumstances"; and (3) "even if
17 the force used is deemed unreasonable, . . . [they] are entitled to qualified immunity in relation to
18 such use."  (Mot. for Summ. J. at 1.)  Defendants also specifically move for summary judgment on
19 the claim involving Defendant Buck by including declarations and an incident report indicating that
20 Defendant Buck was not present during the incident and that SMCJ Deputy Suzanne Blick was
21 instead present and involved.  (Buck Decl. ¶¶ 3-5; Blick Decl. ¶ 12; Merson Decl., Ex. 1 at 5.)
22 Plaintiff acknowledges inadvertently confusing the two names and has moved for leave to amend
23 the complaint pursuant to Federal Rule of Civil Procedure 15(c) (docket no. 68) to add Deputy Blick
24 as a Defendant instead of Defendant Buck.  (Mot. to Amend at 1; Feb. 16, 2012 Opp'n at 4.)

25         On November 14, 2011, after being granted numerous extensions of time, Plaintiff filed his
26 first opposition to Defendants' motion for summary judgment.  In that opposition, Plaintiff also
27 made a request for a continuance to pursue discovery under Federal Rule of Civil Procedure 56(d).
28         In an Order dated November 17, 2011, the Court denied Plaintiff's request under Rule 56(d)

1 and directed Defendants to give Plaintiff access to video footage of the events surrounding the
2 alleged use of excessive force during the September 29, 2005 incident. (Nov. 17, 2011 Order at 1-
3 3.) Plaintiff also indicated that he intended to submit a second opposition to Defendants' motion for
4 summary judgment; however, the Court denied his request to submit it after his release from prison
5 on February 12, 2012. Instead, Plaintiff was given the deadline of December 30, 2011 to file a
6 second opposition.

7 On December 2, 2011, Defendants responded to the Court's November 17, 2011 Order and
8 explained that no such video footage relating to the September 29, 2005 incident existed. (Defs.'
9 Dec. 2, 2011 Resp. at 1.)

10 On January 5, 2012, Plaintiff filed a motion to stay the proceedings, or, in the alternative, to
11 request another extension of time to file a second opposition.

12 On January 27, 2012, the Court denied Plaintiff's motion to stay the proceedings, but granted
13 him another extension of time up to and including February 3, 2012 to file a second opposition to
14 Defendants' motion for summary judgment. (Jan. 27, 2012 Order at 1.)

15 On February 16, 2012, Plaintiff filed his second opposition.

16 On March 6, 2012, Defendants filed a reply to Plaintiff's second opposition.

17 Having read and considered the papers submitted by the parties, the Court GRANTS
18 Defendant Buck's motion for summary judgment as to Plaintiff's excessive force claim against him;
19 DENIES the remaining Defendants' motion for summary judgment; GRANTS Plaintiff's motion for
20 leave to amend the complaint to add Deputy Blick; directs service of Deputy Blick; and refers this
21 case for settlement proceedings.

## **DISCUSSION**

### **I.  Legal Standard for Summary Judgment**

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.

3

1  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or
2  other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The Court must
3  draw all reasonable inferences in favor of the party against whom summary judgment is sought.
4  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford
5  Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

6  Material facts which would preclude entry of summary judgment are those which, under
7  applicable substantive law, may affect the outcome of the case. The substantive law will identify
8  which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the
9  moving party does not bear the burden of proof on an issue at trial, the moving party may discharge
10 its burden of showing that no genuine issue of material fact remains by demonstrating that "there is
11 an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The
12 burden then shifts to the opposing party to produce "specific evidence, through affidavits or
13 admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d
14 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991). A complete failure of proof
15 concerning an essential element of the non-moving party's case necessarily renders all other facts
16 immaterial. Celotex, 477 U.S. at 323.

## II.   Evidence Considered

18 A district court may only consider admissible evidence in ruling on a motion for summary
19 judgment. See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). In
20 support of Defendants' motion for summary judgment, Defendants have presented declarations from
21 Defendants Frayne, Adler, Blick, and Buck as well as SMCJ Management Analyst Thomas M.
22 Merson, Correctional Health Services (CHS) Nurse Barbara Romero, and CHS Clinical Services
23 Manager Susan Kole. Defendants have also attached an incident report containing accounts of the
24 September 29, 2005 incident as reported to Defendant Frayne by Defendants Blick, Adler, and Bow
25 as well as SMCJ Nurse Jennifer Rubins.

26 A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is
27 based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v.
28 McDonald, 55 F.3d 454, 460 (9th Cir. 1995). Plaintiff has supplied his verified complaint, which

4

functions as an affidavit in support of his claims. See id. Plaintiff verified his complaint filed on October 1, 2009 by signing it under "penalty of perjury." (Compl. at 5.)[2] Plaintiff filed an opposition to Defendants' motion for summary judgment on November 14, 2011, but he did not sign it under "penalty of perjury." (Nov. 14, 2011 Opp'n at 7.) On February 16, 2012, Plaintiff submitted a second opposition, which is signed under "penalty of perjury." (Feb. 16, 2012 Opp'n at 20.) An affidavit is "cognizable to establish a genuine issue of material fact so long as [it] state[s] facts based on personal knowledge and [is] not too conclusory." Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001). Therefore, for the purposes of this Order, the Court will construe Plaintiff's complaint and his February 16, 2012 opposition as affidavits under Rule 56 of the Federal Rules of Civil Procedure. See Schroeder, 55 F.3d at 460.

### III. Defendant Buck's Motion for Summary Judgment and Plaintiff's Motion for Leave to Amend Complaint

In his complaint, Plaintiff alleges that Defendant Buck participated in the excessive force used against him. (Compl. at 1.) Defendant Buck counters that he was not present or involved in the September 29, 2005 incident. (Buck Decl. ¶¶ 3-5.) Meanwhile, Deputy Blick admits to being present during that incident. (Blick Decl. ¶ 12.) Plaintiff acknowledges that he confused the two names. (Feb. 9, 2011 Opp'n at 4.) Defendants have presented evidence that Defendant Buck was not present at the incident, and Plaintiff has failed to present any evidence to the contrary. In fact, Plaintiff claims that he had intended to name Deputy Blick, who admits to being present, and requests to amend his complaint to add Deputy Blick as a Defendant in this action. Therefore, Defendant Buck is entitled to summary judgment on the excessive force claim as a matter of law. See Celotex, 477 U.S. at 323.

Accordingly, the Court GRANTS Defendant Buck's motion for summary judgment, and GRANTS Plaintiff's motion for leave to amend the complaint to add Deputy Blick as a Defendant in this action. Meanwhile, the Court finds a cognizable excessive force claim against Deputy Blick and orders service of the complaint on this Defendant, as directed below.

---

[2] Plaintiff has attached one handwritten page in between page three and four of his complaint, but failed to label it with page numbers. The Court has renumbered it to be page four and page four will now be numbered as page five.

1  **IV.  Remaining Defendants' Motion for Summary Judgment**

2      **A.  Factual Background**

3          **1.  Undisputed Facts**

The following facts are based on Plaintiff's verified complaint as well as the aforementioned affidavits, declarations, and other evidence submitted by Plaintiff and Defendants Frayne, Adler, and Bow (hereinafter "remaining Defendants" or "Defendants").

On September 29, 2005, Plaintiff was being transferred to 3 East in SMCJ. (Compl. at 3; Reply at 4.) At approximately 3:50 AM, Plaintiff and Defendant Frayne entered into an elevator and conversed as Defendant Frayne escorted Plaintiff to 3 East, where he was being rehoused. (Merson Decl., Ex. 1 at 4.) Defendants Adler and Blick[3] as well as Nurse Rubins were on the third floor landing leading to the elevator, waiting for Plaintiff and Defendant Frayne to exit the elevator. (Feb. 16, 2012 Opp'n at 9; Merson Decl., Ex. 1 at 3.) Defendant Frayne directed Plaintiff to 3 East, and an altercation ensued. (Compl. at 3, 4; Merson Decl., Ex. 1 at 4.) Defendant Frayne and Plaintiff fell to the floor, at which time Defendants Frayne, Adler, and Blick handcuffed Plaintiff. (Adler Decl. ¶¶ 6, 7.) They transported Plaintiff into the dayroom in 3 East. (Merson Decl., Ex. 1 at 4.) They were then assisted by other staff, who later moved Plaintiff to an intake holding cell. (Id. at 5.)

        **2.  Disputed Facts**

            **a.  Defendants' Version**

On the date of the incident, Plaintiff was to be rehoused to 3 East due to his reclassification as a suicide risk. (Merson Decl., Ex. 1 at 3; Compl., Ex. B at 2.) While Plaintiff was being escorted to the elevator by Defendant Frayne, he asked about the Ferguson gown[4] that Defendant Frayne was

---

[3] As explained above, the Court has granted Defendant Buck's motion for summary judgment and has also granted Plaintiff's motion for leave to amend the complaint to add Deputy Blick as a Defendant in this action. Therefore, at each time Plaintiff named Defendant Buck in his complaint, the Court has replaced each instance with Defendant Blick.

[4] A Ferguson gown is made of a thick quilt-like material, it completely covers the body, front and back, from just below the neck to around the knees (depending on the inmate's height), while leaving the arms uncovered. The gown may be fastened in the front or back with velcro and it can be adjusted to fit any shape or size of prisoner. Pursuant to jail policy, any inmate with a suicide risk level of "minimal risk" or higher must wear a Ferguson gown when housed without a cell mate, even if housed in a general population unit.

6

1  holding. (Merson Decl., Ex. 1 at 3.) Defendant Frayne indicated that the Ferguson gown was for
2  Plaintiff. (Id.) Plaintiff said that he would not wear the gown and asked Defendant Frayne to take
3  him to 3 West instead. (Id.) When Plaintiff and Defendant Frayne reached their destination at the
4  third floor and stepped off the elevator, Plaintiff refused to accompany Defendant Frayne to 3 East
5  and instead turned towards 3 West. (Id.) Defendant Frayne directed Plaintiff to 3 East. (Id.) At
6  that time, Plaintiff, who was not handcuffed, held a blue box containing his property. (Id.) Plaintiff
7  turned towards the officer, dropped the box he was carrying, and tensed his arms in what Defendants
8  Frayne and Blick determined to be an act of defiance. (Id.) On the other hand, Defendant Adler,
9  asserts that Plaintiff dropped the blue box when Defendant Frayne attempted to put Plaintiff in a
10 control hold. (Id. at 4.) Defendant Frayne attempted to place Plaintiff in a control hold and to
11 handcuff him, but he resisted, and forcefully pulled away causing both of them to fall to the ground.
12 (Id. at 3.)

13   Once Plaintiff was on the ground, Defendants Frayne, Adler, and Blick handcuffed him
14 while he continued to struggle violently. (Id.) Defendants Frayne, Adler, and Blick claim they
15 attempted to move Plaintiff to 3 East, but he resisted. Defendants Frayne and Adler indicate that
16 they attempted to move Plaintiff to 3 East after he was handcuffed; however, Plaintiff offered
17 "passive resistance" by refusing to stand and tucking his legs under him. (Adler Decl. ¶ 3; Merson
18 Decl., Ex 1. at 3.) Defendant Blick indicates that throughout the handcuffing and transportation
19 process, Plaintiff "violently resist[ed] by kicking his feet in an attempt to inflict injury to staff,"
20 before he was successfully moved by Defendants Frayne, Adler, and Blick into the dayroom in 3
21 East. (Adler Decl. ¶ 9; Merson Decl., Ex. 1 at 5.)

22   In the dayroom, Plaintiff was "lying on the floor of the dayroom, on his stomach" in "an area
23 that was away from Nurse Rubins." (Blick Decl. ¶ 8; Merson Decl., Ex. 1 at 3.) Although Plaintiff
24 was "handcuffed and on his stomach," he "continued to violently resist by kicking his feet in an
25 attempt to inflict injury to staff who were trying to restrain him . . . ." (Blick Decl. ¶ 9.) SMCJ
26 Correctional Officer David Fletcher[5] "came to assist [them] and pinned Plaintiff Burnett's feet

---

[5] The Court notes that Officer Fletcher is not named as a Defendant in this action.

7

crossways and bent at his knees towards his buttocks to restrain his legs." (Id.) "At that point, additional staff members arrived, and [Plaintiff] calmed down somewhat" and was moved to an intake holding cell. (Merson Decl., Ex. 1 at 5.)

Following the incident, Plaintiff suffered small abrasions on his wrist resulting from his resistance while in handcuffs. (Id.) Nurse Romero, who examined and cleared Plaintiff shortly after the incident, claims she "did not observe any serious injuries to Plaintiff" and did not note any serious injuries in his Progress Report. (Romero Decl. ¶ 8.)

### b. **Plaintiff's Version**

On the date of the incident, Defendant Frayne escorted Plaintiff out of his cell due to a housing transfer to 3 East. (Compl. at 3.) Plaintiff was handcuffed at the time and explained to Defendant Frayne that he could not be housed in 3 East due to an "enemy concern"; however, Defendant Frayne "told [him] that he could care less about [his] health and safety and grabbed [his] wrist and slung him to the ground." (Id.; Feb. 16, 2012 Opp'n at 13.) Plaintiff dropped the blue box when he was grabbed by Defendant Frayne, and Plaintiff's muscles were tensed because the box was heavy, and he was in tight handcuffs. (Feb. 16, 2012 Opp'n at 9-10.) Plaintiff asserts that Defendant Adler then jumped on his back with his knees and twisted Plaintiff's wrist "so hard that [he] began to cry out." (Compl. at 3.) Plaintiff was then hog-tied and "dragged about 25 to 30 feet" into 3 East, where Defendants Blick and Bow "joined in on assaulting [him]." (Id.) Defendant Blick put Plaintiff's head down and put his knee on Plaintiff's head, and Defendant Adler placed a short metal object against the back of Plaintiff's ear until Plaintiff almost fainted because of the pain. (Id. at 4.) Four deputies continued to assault Plaintiff for thirty minutes lifting him in the air by the handcuffs and slamming his face into the cement, until he began "fading in and out." (Id.) Defendants then cut off Plaintiff's clothing in the presence of the female deputies and nurses, and Plaintiff awoke in a puddle of blood and urine hours later. (Id.) As a result of Defendants' actions, Plaintiff suffers continued pain in his wrist and ankle.

### B. **Excessive Force Analysis**

#### 1. **Fourteenth Amendment Standard**

The Due Process Clause of the Fourteenth Amendment protects a post-arraignment pretrial

8

detainee from the use of excessive force that amounts to punishment.[7] Graham, 490 U.S. at 395 n.10 (citing Bell, 441 U.S. at 535-39); see Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002) ("The Due Process clause protects pretrial detainees from the use of excessive force that amounts to punishment . . . Graham therefore explicates the standards applicable to a pretrial detention excessive force claim in this circuit.") (citations omitted). The Ninth Circuit has stated the factors a court should consider in resolving a due process claim alleging excessive force. White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990). These factors are (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. Id.

To determine whether particular restrictions and conditions accompanying pretrial detention amount to punishment, the Court first looks to whether the disability imposed is for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. See Bell, 441 U.S. at 538. Absent a showing of an express intent to punish, whether a restriction amounts to punishment will generally turn on whether there is an alternative, rational purpose for the restriction, and whether the restriction then appears excessive in relation to that purpose. See id. If a restriction or condition is not reasonably related to a legitimate goal, i.e., if it is arbitrary or purposeless, the Court may infer that the purpose of the action is punishment. See id. at 539.

Defendants contend in their motion for summary judgment that Plaintiff has not raised a triable issue of fact as to whether their use of force amounts to punishment. Defendant Frayne asserts that while being transported without handcuffs Plaintiff refused to follow orders directing him to 3 East, and that Plaintiff acted aggressively by dropping the box he was carrying out of defiance in preparation for hostile acts. (Merson Decl., Ex. 1 at 3.) Defendant Adler indicates that Plaintiff's aggression continued as he resisted submitting to handcuffs and refused to be escorted to 3 East, thus, prompting the additional force and manpower used to quell Plaintiff's hostility and protect

---

[7] As mentioned above, Plaintiff was a post-arraignment pretrial detainee at the time of the incident at issue. Therefore, his excessive force claim is properly analyzed under the Due Process Clause of the Fourteenth Amendment.

9

1  bystanders from his hostile acts. (Adler Decl. ¶¶ 4-8.) In support of their claims, Defendants argue
2  that there is no evidence showing that their use of force was excessive under the circumstances or
3  that Plaintiff was injured as a result of their actions. (Romero Decl. ¶ 8; Mot. for Summ. J. at 9.)
4  They further argue that "[n]o evidence shows that shows that Plaintiff was 'hog-tied,' that a metal
5  object was placed against the back of Plaintiff's ear, that he almost blacked out, that he was assaulted
6  by four deputies for thirty minutes, that he was slammed face-first into the cement, or that he was
7  rendered unconscious." (Mot. for Summ. J. at 9.) In addition, Defendants argue that "no evidence
8  suggests that Officer Bow engaged in any of these alleged acts." (Id.)

9        The Court on summary judgment must assume the truth of Plaintiff's verified pleading. See
10 Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (citing T.W. Elec. Svc., Inc. v. Pacific
11 Elec. Contractors, Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987)). Plaintiff contends in his complaint
12 that there was no provocation for Defendants' use of force. (Compl. at 3.) He claims that Defendant
13 Frayne slammed his body to the ground, pressed his face into the floor, and jumped on [his] back
14 with both knees; that he was hogtied; that Defendant Blick held his head down and placed a knee on
15 his head while Defendant Adler placed a short metal object against the back of his ear until he
16 almost fainted; and that four deputies continued to assault him for thirty minutes. (Id. at 3-4.)
17 Contrary to Defendants' claim above, Plaintiff states that Defendant Bow "assisted in [] assaulting
18 [him]." (Id. at 4.) Plaintiff asserts that he was expressing a safety concern and hesitation to be
19 escorted to 3 East, but was in no way acting aggressively or defiantly. (Feb. 16, 2012 Opp'n at 15.)
20 Plaintiff further explains that he was carrying a heavy blue box wearing tight handcuffs and
21 accidentally dropped the box, which if true, may undermine the justification given by Defendants for
22 the initial aggression. (Id. at 12-13.) Plaintiff asserts that he did not resist at any point, and that any
23 physical objection was a reflexive response to the assault by Defendants. (Id. at 13.)

24       While Defendants were not required to use the least intrusive degree of force possible; they
25 were required only to act within a reasonable range of conduct. Here, Defendants claim to have
26 used force as an appropriate response to Plaintiff's resistance. However, Plaintiff denies that he
27 resisted. Even if Defendants believed that Plaintiff posed an immediate threat to their safety, this
28 threat must be evaluated within the totality of the circumstances and balanced against the amount of

10

force Defendants applied. Again, Plaintiff claims he merely expressed a safety concern when he found out he was being escorted to 3 East, and that he was not acting aggressively or defiantly. If Plaintiff is believed -- that his body was slammed to the ground, his face pressed into the floor, he was hogtied, a metal object was held against the back of his ear until he almost fainted, and four deputies assaulted him for thirty minutes -- then the amount of force used by Defendants was unnecessary and excessive. Viewing the evidence in the light most favorable to Plaintiff, he has established a genuine issue for trial concerning the excessiveness of force used on him on September 29, 2005 by Defendants.

Even if Plaintiff were not fully compliant because he did not immediately proceed to 3 East as directed, there were at least four officers who could have controlled him; however, he was still continuously assaulted with physical force. Plaintiff's version of the unprovoked use of force by Defendants while he was not resisting would lead to a conclusion that the force used by these Defendants was excessive. Meanwhile, if believed, Defendants' description of using force necessary to subdue a resisting inmate would lead to a conclusion that the force used was not excessive. Based on Plaintiff's allegations, a reasonable jury could find that Defendants' conduct was not applied in a good-faith effort to restore discipline, but instead it was arbitrary or purposeless; thus, there is a genuine issue of material fact as to whether it amounted to an unconstitutional use of unreasonable force. To grant summary judgment for Defendants, the Court would have to accept their version of events while rejecting Plaintiff's. However, the Court cannot make credibility determinations in connection with a summary judgment motion. Thus, the Court finds that Plaintiff has established a "'genuine issue for trial'" concerning the excessiveness of the force used on him on September 29, 2005. Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

Defendants further argue that the extent of injuries is determinative of the level of force used and that this Court should apply, Hudson v. McMillian, 503 U.S. 1 (1992), in addressing this issue. (Mot. for Summ. J. at 11 (citing Hudson, 503 U.S. at 6-7)).

Again, the Court notes that Defendants have relied on the Eighth Amendment analysis in their motion for summary judgment. For convicted prisoners, whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the deliberate indifference

11

standard is inappropriate. Hudson, 503 U.S. at 6. Instead, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Id. at 6-7; Whitley v. Albers, 475 U.S. 312, 320-21 (1986); Jeffers v. Gomez, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7.

Several circuits have held that the Hudson analysis also applies to excessive force claims brought by pretrial detainees under the Fourteenth Amendment. See Forrest v. Prine, 620 F.3d 739, 744 (7th Cir. 2010); United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999); Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997), abrogated on other grounds by Wilkins v. Gaddy, ____ U.S. ____, 130 S. Ct. 1175, 175 (2010). Although the Ninth Circuit has not addressed the issue, it has routinely used the Eighth Amendment as a benchmark for evaluating claims brought by pretrial detainees. See, e.g., Redman v. County of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc) (pretrial detainee alleging due process violation when attacked by other inmates must show deliberate indifference to personal security as would a prisoner bringing such claim under Eighth Amendment.)

The extent of injury may provide some indication of the amount of force applied. Wilkins, 130 S. Ct. at 1178. Injury and force are only imperfectly correlated, and it is the latter that ultimately counts. Id. at 1178-79. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury. Id. Accordingly, the Court concluded in Hudson that the supposedly "minor" nature of the injuries "provided no basis for dismissal of [Hudson's] § 1983 claim" because "the blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not de minimis for Eighth Amendment purposes." Hudson, 503 U.S. at 10. Applying this concept to the

1  instant action, Plaintiff would not lose the ability to bring an action for violations of his Fourteenth
2  Amendment rights simply because no serious injuries were documented immediately following the
3  incident.
4       In sum, viewing the evidence in the light most favorable to Plaintiff, the Court finds that
5  genuine issues of material fact remain. Assuming the truth of Plaintiff's pleadings, evidence
6  produced by Defendants conflicts with Plaintiff's evidence with respect to at least two questions of
7  fact. First, a genuine issue of material fact exists regarding whether Plaintiff was resistant or
8  combative during the escort such that Defendants' application of force was necessary. Second,
9  assuming some force was warranted, there is a material issue of fact regarding whether Defendants'
10 force was applied in a good faith effort to maintain and restore discipline. See White, 901 F.2d at
11 1507. A reasonable jury, drawing inferences from facts in the light most favorable to Plaintiff, could
12 find that Defendants' use of force amounts to punishment because it was not reasonably related to a
13 rational alternative purpose, or because it was excessive in relation to that purpose. See Bell, 441
14 U.S. at 538. Accordingly, the Court concludes that Plaintiff has set forth "specific facts showing
15 that there is a genuine issue for trial" and, therefore, the remaining Defendants are not entitled to
16 summary judgment as a matter of law, and their motion for summary judgment is DENIED.
17 Celotex, 477 U.S. at 324.

### 2. Qualified Immunity

19 In the alternative, the remaining Defendants claim that they are entitled to qualified
20 immunity.
21      Under Pearson v. Callahan, 555 U.S. 223, 225 (2009), the Court may choose to undertake the
22 two-step analysis outlined in Saucier v. Katz, 533 U.S. 194, 201 (2001), when a defendant asserts
23 qualified immunity in a motion for summary judgment. The Court may first ask whether "[t]aken in
24 the light most favorable to the party asserting the injury, do the facts alleged show the officer's
25 conduct violated a constitutional right?" Saucier, 533 U.S. at 201 (mandatory process overruled, but
26 optional advisory nature of the two step test still permissible at the courts discretion under Pearson).
27 If the Court determines that a constitutional right has been violated, it may then move to the second
28 step and ask "whether the right was clearly established" such that "it would be clear to a reasonable

1  officer that his conduct was unlawful in the situation he confronted?" Id. at 201-02.  In the
2  excessive force context, the Court first makes an inquiry into the objective reasonableness of the
3  officer's belief in the necessity of his actions; the Court next makes an inquiry into the objective
4  reasonableness of the officer's belief in the legality of his actions.  Wilkins v. City of Oakland, 350
5  F.3d 949, 954-55 (9th Cir. 2003).  The qualified immunity analysis does not take "20/20 vision of
6  hindsight" into account, but rather gives deference to the judgment of reasonable officers at the time
7  of the occurrence.  Graham, 490 U.S. at 396.

8       In applying the first prong of Saucier, this Court must determine whether there was a
9  constitutional violation.  Viewing the evidence in the light most favorable to Plaintiff, Defendants'
10 actions did amount to a Fourteenth Amendment violation as Plaintiff has raised a triable issue of fact
11 as to the excessiveness of the force used against him.

12      Applying the second prong of Saucier, this Court must determine whether the right violated
13 was "clearly established."  Deorle v. Rutherford, 272 F.3d 1272, 1287-87 (9th Cir. 2001).  The law is
14 unmistakable that, at the time of Defendants' actions, the use of excessive force by deputies and
15 correctional officers on a jail inmate -- who is not resisting -- was a violation of the Fourteenth
16 Amendment.  A reasonable officer could have believed that Defendants' actions -- using excessive
17 force by applying physical force -- were unlawful in light of clearly established law and the
18 information that Defendants possessed at the time of the incident.  See Saucier, 533 U.S. at 205.

19      Accordingly, the remaining Defendants are not entitled to qualified immunity as a matter of
20 law with respect to Plaintiff's claim of excessive force.  Their motion is DENIED on this ground.

**CONCLUSION**

For the foregoing reasons,

1.    The Court GRANTS Defendant Buck's motion for summary judgment as to Plaintiff's excessive force claim against him (docket no. 43).  The Court DENIES the remaining Defendants' motion for summary judgment (docket no. 43).

2.    The Court GRANTS Plaintiff's motion for leave to amend the complaint to add Deputy Blick as a Defendant in this action (docket no. 68).

3. The Court finds a cognizable excessive force claim against Defendant Blick and directs service of this Defendant. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, as well as copies of (1) the complaint (docket no. 1), (2) the Court's April 23, 2010 Order (docket no. 4), and (3) this Order to **SMCJ Deputy Suzanne Blick (D-813).** The Clerk shall also mail copies of these documents to the remaining Defendants' attorney, Glenn Michael Levy, Esq., at the San Mateo County Counsel's Office. Additionally, the Clerk shall serve a copy of this Order on Plaintiff.

4. Defendant Blick shall answer the complaint and file a motion for summary judgment or other dispositive motion as directed by the Court's April 23, 2010 Order. If Defendant Blick is of the opinion that this case cannot be resolved by summary judgment, she shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

5. Unless this case can be settled it will have to be tried.

6. The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a Magistrate Judge for a settlement conference. The Court finds that a referral is in order now that Plaintiff's excessive force claim against the remaining Defendants has survived summary judgment. Thus, this case is REFERRED to Magistrate Judge Nandor Vadas for a settlement conference.

The conference shall take place within **one-hundred-twenty (120) days** of the date of this Order, or as soon thereafter as is convenient to the Magistrate Judge's calendar. Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within **ten (10) days** after the conclusion of the conference, file with the Court a report regarding the conference.

The Clerk shall provide a copy of this Order, and copies of documents from the court file that are not accessible electronically, to Magistrate Judge Vadas.

7. This Order terminates Docket nos. 43 and 68.

IT IS SO ORDERED.

DATED: March 30, 2012    

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMARR L. BURNETT, | Case Number: CV09-04693 SBA |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| FRAYNE et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 9, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

O'Marr L. Burnett
9949 Lawlor Street
Oakland, CA 94605

Dated: April 9, 2012

Richard W. Wieking, Clerk
By: Lisa Clark, Deputy Clerk